No. 25-51034

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

Min Huang; Qiong Dai,

*Plaintiffs – Appellants*

v.

Ken Paxton, Attorney General, State of Texas,

*Defendant – Appellee*

---

**On Appeal from**
United States District Court for the Western District of Texas

1:25-CV-1509-ADA

---

# BRIEF OF APPELLANTS

---

SUBMITTED BY:


Justin Sadowsky
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
4250 N. Fairfax Drive
Arlington, VA 22203

Keliang (Clay) Zhu
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
| --- | --- |
| Ken Paxton | Benjamin Mendelson of Office of the Texas Attorney General Austin, TX |
| Ken Paxton | Brian Keith Ingram of Office of the Attorney General Austin, TX |

| **Appellants:** | **Counsel for Appellants:** |
| --- | --- |
| Min Huang and Qiong Dai | Justin Sadowsky of Chinese American Legal Defense Alliance, Arlington, VA |
| Min Huang and Qiong Dai | Clay Zhu of the Chinese American Legal Defense Alliance, Pleasanton, CA |
| Min Huang and Qiong Dai | Zhonghua Lai of Austin, TX |

| **Plaintiff below:** | **Counsel for Plaintiff below:** |
| --- | --- |
| Jiayin Dong | Justin Sadowsky of Chinese American Legal Defense Alliance Arlington, VA |

| | |
|---|---|
| Jiayin Dong | Clay Zhu of the Chinese American Legal Defense Alliance, Pleasanton, CA |
| Jiayin Dong | Zhonghua Lai of Austin, TX |

/s /Justin Sadowsky
Attorney of record for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument. Appellants respectfully state that oral argument is warranted due to the importance and novelty of the issues presented, and the possibility that affirming the District Court's decision would create a significant circuit split.

## TABLE OF CONTENTS

INTRODUCTION .......... 1
JURISDICTIONAL STATEMENT .......... 3
STATEMENT OF ISSUES .......... 4
STATEMENT OF THE CASE .......... 5
A. The legislature passes SB 17. .......... 5
B. Appellants will be harmed by SB 17. .......... 7
C. Appellants sue the Attorney General. .......... 9
SUMMARY OF ARGUMENT .......... 11
ARGUMENT .......... 13
I. Standard of Review. .......... 13
II. Individuals outside the country have constitutional rights concerning their conduct and property in the United States. .......... 13
A. The Constitution applies to conduct Appellants will perform while in the United States. .......... 13
B. Foreigners currently outside the United States may bring pre-enforcement challenges. .......... 14
C. The Constitution applies to conduct Appellants direct at the United States, such as purchasing property. .......... 15
III. Appellants' preemption claims are not vindications of their own Constitutional rights anyway. .......... 20
IV. The Attorney General's potential alternative arguments for affirming are unpersuasive. .......... 22
A. There is a substantial threat of future enforcement against Appellants. .......... 23
B. Appellants reserve the right to challenge the correctness of *Wang*. .......... 26
CONCLUSION .......... 27
CERTIFICATE OF COMPLIANCE .......... 29

## TABLE OF AUTHORITIES

### Cases

*Alcan Aluminum Ltd. v. Franchise Tax Bd. of State of Cal.*, 860 F.2d 688 (7th Cir. 1988)....................22
*California Pharmacists Ass'n v. Maxwell–Jolly*, 563 F.3d 847 (9th Cir. 2009)....................20. 21
*City of Austin v. Paxton,* 943 F.3d 993 (5th Cir. 2019)....................26
*Day v. Bond*, 511 F.3d 1030 (10th Cir. 2007)....................21
*Douglass v. Nippon Yusen Kabushiki Kaisha,* 46 F.4th 226 (5th Cir. 2022)....................14, 16-18, 22
*Free Speech Coalition, Inc. v. Colmenero,* 689 F.Supp.3d 373 (W.D. Tex. 2023)....................15-17
*Free Speech Coalition. v. Paxton,* 95 F.4th 263 (5th Cir 2024)....................14-17
*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)....................17
*Hope Medical Group for Women v. Edwards*, 63 F.3d 418 (5th Cir. 1995)....................21
*Immigr. Reform Coal. of Texas v. Texas*, 706 F. Supp. 2d 760 (S.D. Tex. 2010)....................20
*Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434 (1979)....................22
*Johnson v. Eisentrager*, 339 U.S. 763 (1950)....................18
*La Union del Pueblo Entero v. Abbott*, 151 F.4th 273 (5th Cir. 2025) . 24-26
*Mercado v. Lynch*, 823 F.3d 276 (5th Cir. 2016)....................25
*Montano v. Texas*, 867 F.3d 540 (5th Cir. 2017)....................27
*Moore v. Brown,* 868 F.3d 398 (5th Cir. 2017)....................13
*National Council of Resistance of Iran v. Department of State*..16, 18, 19
*Ping v. United States*, 130 U.S. 581 (1889)....................18
*Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324 (5th Cir. 2005)....................21
*Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931)....................16
*Sardino v. Federal Reserve Bank of New York*, 361 F.2d 106 (2d Cir. 1966)....................19
*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)....................21
*Speech First. v. Fenves*, 979 F.3d 319 (5th Cir. 2020)....................23, 24
*Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713 (11th Cir. 2014)....................19
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)....................14, 15, 23

*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ..........26
*Turtle Island Foods v. Strain*, 65 F.4th 211 (5th Cir. 2023) ...........23. 24
*United States ex rel. Turner v. Williams*, 194 U.S. 279 (1904)..............18
*United States v. Allegheny Cty.*, 322 U.S. 174, 183 (1944) ....................20
*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990)......................18
*USAID v. Alliance for Open Society International, Inc.*, 591 U.S. 430 (2020) ..........................................................................................17
*Wang v. Paxton*, 161 F.4th 357 (5th Cir. Dec. 11, 2025)................ passim

**Statutes**

28 U.S.C. § 1331 .................................................................3, 21
28 U.S.C. §§ 1292(a) and 1294(1)..........................................................3
Chinese Exclusion Act, Act of May 6, 1882, 22 Stat. 58........................18
Equal Credit Opportunity Act...........................................................9, 10
Equal Protection Clause.......................................................................9
Magnuson Act, ch. 344, 57 Stat. 60 (1943) ...........................................18
ROA.16...................................................................................................9
Tex. Prop. Code § 5.251(3)(A).................................................................6
Tex. Prop. Code § 5.253(4)(A .................................................................7
Tex. Prop. Code § 5.253(4)(B).................................................................8
Tex. Prop. Code § 5.258(a)......................................................................6
Tex. Prop. Code §§ 5.253, 5.253.........................................................5, 6
Tex. Tax Code § 11.13(j) .........................................................................6

**Constitutional Provisions**

U.S. Const. art. III........................................................................ passim
U.S. Const. art. VI, cl. 2..................................................................21, 22
U.S. Const. amend. V ............................................................................16
U.S. Const. amend. XIV, § 1....................................................................9

**Other Authorities**

Richard H. Fallon, Daniel J. Meltzer, & David L. Shapiro, *Hart & Wechsler's The Federal Courts & The Federal System* 903 (5th ed.2003)...............................................................................................21

## INTRODUCTION

The Constitution applies to state governments like Texas for actions they take in or directed at the United States. SB 17, the law challenged by Appellants Min Huang and Qiong Dai, prohibits Chinese people living abroad such as Huang and Dai from buying investment properties. Because they will be traveling to Texas under valid visas to buy these investment properties, because these properties are in Texas, and because Texas enforces SB 17 domestically through their state courts, Huang and Dai's purchases are protected by the Constitution.

Yet the District Court held that, as Chinese people who currently live outside the United States, the Constitution does not apply at all to Min Huang and Qiong Dai, and so they cannot bring any of their claims—neither their Equal Protection Clause claims nor their federal preemption clause claims—in federal court. This was error.

And, at least as far as the preemption claims, it was also the wrong question. Because federal preemption claims vindicate the rights of the federal government rather than the Appellants, all Appellants need to bring such claims is Article III standing.

In denying Appellants' motion for a preliminary injunction, the District Court did not find that Appellants lacked Article III standing. And while the Attorney General argued a lack of Article III standing below, that argument fails under this Court's prior precedents. Here, where the Attorney General (a) has the authority to enforce SB 17 (b) does not disclaim that authority in general (c) has in fact begun to exercise that enforcement authority, and (d) does not dispute that Appellants' desired actions violate SB 17, Article III standing exists.

## JURISDICTIONAL STATEMENT

The District Court for the Southern District of Texas had jurisdiction over this case under 28 U.S.C. § 1331 because Appellants' claims arose under the Constitution and laws of the United States. Venue was proper in the Western District of Texas because the case involves a challenge to Texas law and because defendant Paxton resides in Austin, Texas. On December 9, 2025, the District Court issued an order denying the motion for a preliminary injunction as to Appellants and dismissing Appellants from the case. ROA.441. On December 11, 2025, Appellants filed a timely notice of appeal. ROA.443. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1292(a) and 1294(1).

## STATEMENT OF ISSUES

(1) Does the Constitution protect foreign purchasers of property in the United States made while those foreign purchasers are here in the United States?

(2) Even if the Constitution does not protect foreign purchasers of property in the United States, may foreign purchasers still bring federal preemption claims over a state's regulation of their United States property?

## STATEMENT OF THE CASE

### A. The legislature passes SB 17.

SB 17 prohibits Chinese citizens, agents, and members of the Chinese communist party from purchasing or leasing land in Texas, subject to certain exceptions. Tex. Prop. Code §§ 5.253, 5.253.[1] Exceptions include Chinese Citizens who are also U.S. citizens or permanent residents (who are exempted from SB 17 outright), *id.* § 5.252(1), as well as (other than Chinese agents and members of the Chinese Communist Party) Chinese citizens who are lawfully present in the United States, but not U.S. citizens or permanent residents, and are still domiciled in the United States, *id.* §§ 5.253(4)(A)-(B). The law and its prohibitions further apply to any company or organization majority-owned or under the control of a covered Chinese person, headquartered in China, "directly or indirectly controlled" by the Chinese government. *Id.* §§ 5.253(1)-(3).

Once the law applies, it forbids a covered person or entity from owning or leasing any form of property in Texas, subject to two exceptions. Tex. Prop. Code § 5.253. First, any covered entity may lease property for

[1] *See* https://legiscan.com/TX/text/SB17/id/3249196/Texas-2025-SB17-Enrolled.html.

under a year. *Id.* § 5.252(3). Second, Chinese citizens who are domiciled in China, legally residing in the United States, and are not Chinese agents or members of the Chinese Communist Party, may purchase a home for use as a "residence homestead" as that term is defined by the Texas tax code. *Id.* § 5.253(4)(A), Tex. Tax Code § 11.13(j).

The law applies in similar fashion to Iran, North Korea, and Russia, Tex. Prop. Code § 5.251(3)(A).[2] Countries can be added to or deleted from the law's restrictions based on either the Annual Threat Assessments of the U.S. Intelligence Committee, *id.* § 5.251(3)(A), or the Governor's whim, *id.* § 5.254(a)(2). The Governor may separately declare entities "a transnational criminal organization" and subject their members, to the law's prohibitions as well. *Id.* § 5.254(a)(2). The Governor may also designate or remove any company or organization from the law's reach. *Id.* § 5.253(2)(d).

Besides various civil penalties, any intentional or knowing violation of SB 17 is a state jail felony. Tex. Prop. Code § 5.258(a).

---

[2] See https://www.dni.gov/files/ODNI/documents/assessments/ATA-2025-Unclassified-Report.pdf.

## B. Appellants will be harmed by SB 17.

Min Huang is a citizen of China. Huang Decl. ROA.58. She is neither a citizen nor a permanent resident of the United States, and in fact, lives in Shanghai China. *Id*. Ms. Huang previously worked in hotel and international trade businesses. *Id.* She now provides consultation services to Chinese citizens who are interested in obtaining United States green cards through the EB-5 investment immigration program. *Id.* She also assists Chinese clients with diversifying assets through the United States, including buying investment properties in the United States. *Id.*

In 2018, Ms. Huang, along with some friends, jointly bought an investment property in the Houston area. ROA.58-59. She now rents that property out. ROA.59. Her mother (also a Chinese citizen living in China) also bought two similar investment properties, which Ms. Huang now co-owns with her mother. *Id.* As part of her rental business, Ms. Huang occasionally visits the United States on a B-1/B-2 business visitor visa. *Id.*

Ms. Huang now plans to purchase additional properties in Texas. *Id.* She had a plan to meet with a Texas real estate agent this October. *Id.* But because of SB 17, she will be banned from purchasing property in Texas. *See* Tex. Prop. Code § 5.253(4)(A). Also, because of SB 17, it is

unlikely she will be able to find appropriate financing for any purchase, because lenders will not want to lend to Ms. Huang when there is a risk that the collateral for such a loan will be seized by the Attorney General. *See* ROA.61.

Qiong Dai's story is similar to Ms. Huang's. She is also a citizen of China. Dai Decl. ROA.62. She is neither a citizen nor a permanent resident of the United States, and in fact, lives in New Zealand, where her daughter goes to middle school. *Id.* As a result, she is also covered under SB 17. Tex. Prop. Code § 5.253(4)(B).

Ms. Dai invests in real estate. ROA.62. She owns a rental property in the Houston, Texas area. *Id.* As part of her investment business, Ms. Dai held a B-1/B-2 visa from 2015 through 2025, and plans on renewing it now that it has expired. ROA.62-63.

Now Ms. Dai would like to purchase a second investment property in the Houston area. ROA.63. But she, like Ms. Huang, is prohibited from doing so because of SB 17. And like Ms. Huang, she would also be unlikely to find appropriate financing for any purchase, because lenders will not want to lend to Ms. Huang when there is a risk that the collateral for such a loan will be seized by the Attorney General.

### C. Appellants sue the Attorney General.

Appellants, along with Jiayin Dong (an undergraduate student from China who attends Baylor University), brought a class action lawsuit the Attorney General over SB 17. ROA.6. The lawsuit brought claims under the Supremacy Clause arguing that SB 17 was preempted by federal statutory regimes governing immigration, foreign affairs, and national security, as well as the Fair Housing Act and the Equal Credit Opportunity Act. ROA.13-16, 18-23. The lawsuit also brought a claim that SB 17 violated the Equal Protection Clause. ROA.16-18. The lawsuit sought prospective and declaratory relief (as well as attorneys' fees) only. ROA.23. Along with their lawsuit, Appellants and Dong filed a motion for a preliminary injunction, ROA.38, as well as a provisional motion for class certification, ROA.77.

The Attorney General opposed both motions, ROA.127, ROA.135, and moved to dismiss the lawsuit against all three plaintiffs, ROA.140. Appellants and Dong naturally opposed the Motion to Dismiss, ROA.216. In doing so, they asserted that they would move to amend the lawsuit after the motions were resolved to include claims for direct violations of

the FHA and ECOA, which were functionally the same as the claims that those laws preempted SB 17. ROA.230, ROA.232.

The District Court held a hearing, ROA.479. After the hearing, the District Court denied the preliminary injunction as to Huang and Dai, ruling that because they were foreign citizens outside the United States, they had no constitutional rights to assert under SB 17. ROA.442, ROA.447-448. It separately denied the preliminary injunction as to Dong because he was seeking to rent, rather than purchase, property, and his lease does not expire until this July. ROA.450. The District Court then stayed the case pending the outcome in *Wang v. Paxton*, another challenge to HB 17 that was pending in the Fifth Circuit. *Id.* The District Court also dismissed both Appellants. *Id.*

Appellants appealed. ROA.452. Later that day, this Court issued its decision in *Wang v. Paxton*, 161 F.4th 357 (5th Cir. Dec. 11, 2025). Dong's motions for a preliminary injunction and provisional class certification, and the Attorney General's motion to dismiss him, remain pending.

## SUMMARY OF ARGUMENT

Appellants may bring their challenges to Texas' SB 17 because they allege that they wish to travel to the United States to purchase property, and that these purchases would violate SB 17. Because they will be in the United States (under valid visas), they have the same rights to challenge SB 17 as any other individual.

Even if Appellants were not traveling to the United States, their conduct is still directed toward the United States and concerns purchases in the United States. This alone imbues these purchases with constitutional rights under SB 17.

And even if Appellants themselves had no constitutional rights over their purchases of property in Texas at all, they still could bring their preemption claims. Because preemption claims vindicate the rights of the federal government rather than the claimants, all that is necessary to bring a preemption claim is the minimum requirements of Article III standing.

So Appellants can bring their challenges to SB 17, and therefore denying their preliminary injunction on the basis that they have no

constitutional rights as Chinese people living outside the United States was in error.

Meanwhile, any arguments the Attorney General might make to affirm on alternative grounds should fail. Most notably, the Attorney General's argument below that Appellants lack Article III standing because the Attorney General has taken no action to enforce the law against them should fail for two separate reasons. ***First***, the Attorney General (who is tasked with enforcing SB 17) does not disclaim either that he will enforce the law in general or that the purchases that Appellants seek to engage in violate SB 17. This alone is enough. ***Second***, even if some scintilla of affirmative evidence enforcement action is necessary before a pre-enforcement challenge is ripe, the Attorney General has already enforced the law by requiring real estate developers to ensure compliance with SB 17 as part of a consent decree.

## ARGUMENT

### I. Standard of Review.

The denial of a preliminary injunction, based on legal conclusions from undisputed facts, is reviewed de novo. *Moore v. Brown*, 868 F.3d 398, 403 (5th Cir. 2017).

### II. Individuals outside the country have constitutional rights concerning their conduct and property in the United States.

#### A. The Constitution applies to conduct Appellants will perform while in the United States.

The District Court helpfully places its holding at the top of its opinion: "It is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." ROA.447 (citations omitted). This is not true in all aspects. *See* § II(C), *below*. But even if it were true, it would not matter. As the Motion for a Preliminary Injunction made clear (and the government did not dispute), *see* ROA.127-134, Huang and Dai both plan on coming to the United States, through visas issued by the federal government, when they purchase their investment properties in Texas. ROA.59 (Huang visits the United States as part of her real estate investments and planned on meeting with her Texas real estate agent prior to the enactment of SB 17); ROA.62-63 (Dai planned on renewing her visa so she could visit the

United States for the purpose of investing in a property in the Houston area).

So Appellants will not be "foreign citizens outside U.S. territory" when they purchase the property that SB 17 forbids them to. They will be foreign citizens in Texas. They will have the same constitutional rights as anyone else. *See Free Speech Coalition. v. Paxton ("Free Speech Coalition II"),* 95 F.4th 263, 287 (5th Cir 2024), *cert. granted on other grounds and affirmed*, 606 U.S. 461 (2025); *Douglass v. Nippon Yusen Kabushiki Kaisha,* 46 F.4th 226, 232 (5th Cir. 2022).

### B. Foreigners currently outside the United States may bring pre-enforcement challenges.

Perhaps the District Court simply meant to say that because the Appellants were not in the United States yet, they were less likely to satisfy the case-or-controversy requirement for Article III standing under *Susan B. Anthony List v. Driehaus*. 573 U.S. 149, 159 (2014). After all, the District Court rejected Appellants argument that the Constitution will apply "when Huang and Dai arrive in Texas on valid visas with the intent to purchase additional property," because "the argument that Ms. Huang and Ms. Dai intend to purchase additional property is still a

future proposition" that "does not show a present injury in fact to them." ROA.448.

But it's not clear why Appellants cannot bring a pre-enforcement challenge merely because they are currently outside the United States. Their current location is irrelevant to the *Susan B. Anthony List* test. As *Free Speech Coalition, Inc. v. Colmenero ("Free Speech Coalition I")*, 689 F.Supp.3d 373 (W.D. Tex. 2023), explained as to foreign plaintiffs abroad in a First Amendment challenge, "[i]t would make little sense to allow Plaintiffs to exercise First Amendment rights as a defense in litigation but deny them the ability to raise a pre-enforcement challenge to imminent civil liability on the same grounds." *Id.* at 388. "Their pre-enforcement challenge, by definition, requires Plaintiffs to show that the risk of civil prosecution in Texas is concrete and imminent." *Id.* The Fifth Circuit then affirmed that part of *Free Speech Coalition I* in *Free Speech Coalition II*, without further commentary. *See also* § C, *below*.

### C. The Constitution applies to conduct Appellants direct at the United States, such as purchasing property.

Even if Appellants would not be traveling to the United States, the District Court's holding that they lack constitutional rights would still be wrong because the behavior they plan to engage in—purchasing property

in Texas—is directed at the United States. As *National Council of Resistance of Iran v. Department of State* explained, prior Supreme Court precedent "makes clear that a foreign organization that acquires or holds property in this country may invoke the protections of the Constitution when that property is placed in jeopardy by government intervention." 251 F.3d 192, 204 (D.C. Cir. 2001) (citing *Russian Volunteer Fleet v. United States*, 282 U.S. 481, 491–92 (1931) ("As alien friends are embraced within the terms of the Fifth Amendment, it cannot be said that their property is subject to confiscation here because the property of our citizens may be confiscated in the alien's country")). And so this Court explained in *Free Speech Coalition II* explained that "[w]e have never held that because of their lack of citizenship, non-Americans have no rights under the First Amendment when they speak in the United States, and we will not do so here." 95 F.4th at 287. *Free Speech Coalition II* thus concluded that foreign plaintiffs (none of whom were in the United States) had the same constitutional rights as domestic plaintiffs when their conduct was directed at the United States. *Id.*; *see also Free Speech Coalition I*, 689 F. Supp. 3d at 388 (explaining that "their speech and conduct occurs in Texas"). Similarly, in *Douglass,* this Court held en banc

that the Constitution (there, the Due Process Clause) applies to constitutional violations directed at foreign companies abroad for a "constitutional violation" that "can occur only in the United States," since the defendants were to be held to account "in the course of litigation ***in the United States***." 46 F.4th at 232 (emphasis original).

*Free Speech Coalition II* specifically distinguished *USAID v. Alliance for Open Society International, Inc.*, 591 U.S. 430 (2020), the chief case relied upon by the District Court here, as "applying to 'foreign organizations operating abroad.'" 95 F. 4th at 287; *see also Free Speech Coalition I* at 388 ("unlike the foreign plaintiffs in *AOSI*, the foreign website Plaintiffs in the instant case do operate in the United States for all purposes relevant to this litigation"). *Douglass* distinguished *AOSI* for the same reason. 46 F.4th at 232.

Nor do any of the other cases the District Court cited besides *AOSI* support its holding. The dispute in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), was whether a United States citizen arrested in Afghanistan (outside the United States) for conduct that he performed in Afghanistan was in the United States, was in the United States and therefore could, in fact, invoke habeas corpus. *Id.* at 523-24. Critically, it was not a pre-

enforcement challenge, nor was it about conduct directed at the United States. *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), also distinguished by *Douglass*, 46 F.4th at 232, "presented" the "question" of "whether the Fourth Amendment applies to the search and seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country." 494 U.S. at 261. *Johnson v. Eisentrager*, 339 U.S. 763 (1950), involved the "ultimate question" of "one of jurisdiction of civil courts of the United States vis-a-vis military authorities in dealing with enemy aliens overseas." *Id.* at 765. In *United States ex rel. Turner v. Williams*, 194 U.S. 279 (1904), the Supreme Court held that the First Amendment did not require the federal government to admit into this country someone committed to overthrowing it, because the Constitution itself did not apply to the foreign government's ability to exclude foreigners. *Id.* at 292; *see also* Chinese Exclusion Act, Act of May 6, 1882, 22 Stat. 58 (prohibiting all Chinese non-citizens from entering the United States), *upheld by Ping v. United States*, 130 U.S. 581 (1889), *repealed by* Magnuson Act, ch. 344, 57 Stat. 60 (1943).

Other Courts of Appeals are of the same mind. Besides the D.C. Circuit in *NCRI*, the Eleventh Circuit—making the same distinction the

District Court failed to make here—held that "[w]here a district court exercises its jurisdiction over property within the United States, however, the owners of that property have due process rights regardless of their location or nationality." *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 725 (11th Cir. 2014). And Judge Friendly famously criticized the government in *Sardino v. Federal Reserve Bank of New York*, 361 F.2d 106, 111 (2d Cir. 1966): "The Government's second answer that 'The Constitution of the United States confers no rights on non-resident aliens' is so patently erroneous in a case involving property in the United States that we are surprised it was made." Instead, "the guarantees of the Constitution have been considered applicable to all actions of the Government within our borders—and even to some without." *Id.* (citation omitted).

*  *  *

Because Texas plans on targeting Appellants' purchases in Texas, including by appropriating their property, and plans on doing so through the operation of American courts, the Constitution applies to their actions. If Texas sought to punish Appellants for purchasing land in, say, Egypt, and planned on doing so without reliance on courts in the United

States, that would raise different questions. *See* § III, *below*. But since Texas seeks to use government power here in the United States, the Constitution applies.

## III. Appellants' preemption claims are not vindications of their own Constitutional rights anyway.

As it relates to Appellants' Supremacy Clause claims that SB 17 is preempted by federal law, it does not matter if the Constitution applies to Appellants. That is because, in a preemption claim, it is not the Constitutional rights of the plaintiffs that are being directly violated, but the structure of the Constitutional and the operation of federal law.

"The purpose of the supremacy clause was to avoid the introduction of disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls." *U.S. v. Allegheny Cty.*, 322 U.S. 174, 183 (1944). Individuals bringing Supremacy Cause claims are not directly enforcing their own rights, but instead indirectly enforcing the rights of the federal government. So, as explained in *Immigration Reform Coalition v. Texas*, 706 F. Supp. 2d 760, 764 (S.D. Tex. 2010), "[a] plaintiff is also not required to assert a federally created 'right,'" but instead must merely "meet the three requirements of Article III standing." (Citing *California Pharmacists Ass'n v. Maxwell–Jolly*, 563

F.3d 847, 850–51 (9th Cir. 2009); and *Day v. Bond*, 511 F.3d 1030, 1033–34 (10th Cir. 2007)); *see also Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 331-335 (5th Cir. 2005) (immaterial that preempting statute did not "vindicate any right" or "enforce any duty running to them).

As a result, a plaintiff with Article III standing "who seeks who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n.14 (1983), *quoted by Sanchez,* 403 F.3d at 331. It is immaterial whether any independent right "has been stated." *Sanchez, id.* at 333 (citing *Hope Medical Group for Women v. Edwards*, 63 F.3d 418, 423 (5th Cir. 1995). That an "implied right of action" exists in this scenario is "well established." *Id.* at 334 (citing Richard H. Fallon, Daniel J. Meltzer, & David L. Shapiro, *Hart & Wechsler's The Federal Courts & The Federal System* 903 (5th ed. 2003)).

This is no different than a Dormant Foreign Commerce Clause case. Under the Dormant Foreign Commerce Clause, a state cannot regulate foreign commerce even though the federal government can. *See generally Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434, 444-449 (1979). And when a state tries to regulate, for instance, foreign ships "used exclusively in foreign commerce," that are "registered in Japan" and "used exclusively" for foreign commerce, and a state like California tries to tax those ships, *id.* at 436, the ships' foreign owners have standing to challenge that behavior. *See also Alcan Aluminum Ltd. v. Franchise Tax Bd. of State of Cal.*, 860 F.2d 688, 697 (7th Cir. 1988) (foreign parent corporation has standing to raise Foreign Commerce Clause challenge to state law that taxed subsidiary, because the parent is still being injured as a shareholder), *rev'd on other grounds sub nom. Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331 (1990).

## IV. The Attorney General's potential alternative arguments for affirming are unpersuasive.

The Attorney General may argue in response that even if the Court's holding was wrong, the denial of the preliminary injunction can be affirmed on the alternative theory of Article III standing that the

Attorney General raised below. But here, Appellants meet the standing requirements laid out by *Susan B. Anthony List*, 573 U.S. at 157.

To show standing in a pre-enforcement challenge, a party must show he (1) has an "intention to engage in a course of conduct arguably affected with a constitutional interest," (2) his intended future conduct is "arguably ... proscribed by [the policy in question]," and (3) "the threat of future enforcement of the [challenged policies] is substantial." *Speech First. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (citing *Susan B. Anthony List*, 573 U.S. at 157).

### A. There is a substantial threat of future enforcement against Appellants.

As explained in Sections II and III above, Appellants meet the first prong. As to the second prong, unlike in *Wang*, 161 F.4th 357, at 360-61, there does not appear to be any dispute that the Appellants' intended purchases would violate SB 17. So that just leaves the third prong, i.e., the threat of future enforcement.

When courts "face a pre-enforcement challenge 'to recently enacted (or, at least, non-moribund) statutes … by the class to which the plaintiff belongs, [they] will assume a credible threat of prosecution in the absence of compelling contrary evidence.'" *Turtle Island Foods v. Strain*, 65 F.4th

211, 218 (5th Cir. 2023) (quoting *Speech First,* 979 F.3d at 335). And concessions from the Attorney General disclaiming an intent to enforce against challengers are not sufficient. *Id.* ("Even the State's disclaimed intent to penalize the nine labels is not compelling."). "[N]othing binds the [Attorney General] here—he (or a future holder of his office) could change his mind and decide [Appellants' actions] do violate the statute." *Id.*

In *Wang*, the Fifth Circuit held that there is a "presumption of enforcement only in the First Amendment context." 161 F.4th at 362. But *Wang* was silent as to what is sufficient outside the First Amendment. *La Union del Pueblo Entero v. Abbott*, 151 F.4th 273 (5th Cir. 2025), provides the correct test. There, certain plaintiff organizations had standing to challenge compensation provisions of a Texas state law under the Voting Rights Act. The Harris County District Attorney conceded that the Texas law prohibited the conduct in question, but claimed there was no standing to sue Harris County because Harris County disclaimed any intent to bring claims against those particular plaintiffs. *Id.* at 289. This Court nevertheless found standing because (1) plaintiffs "established that they have engaged in (and will continue to engage in) conduct

prohibited by" the new law, and (2) "Harris County DA has not disavowed prosecutions under" the new law "for that behavior." *Id.* "[S]o a credible threat of prosecution exists." And, in *Wang*, the Fifth Circuit expressly distinguished *La Union* on the basis that there, the state conceded "that a challenged provision applied to services provided by the plaintiff."

Appellants meet the test put forth by *La Union*. They have established that they have purchased land in Texas, and they will continue to do so, and that such purchases are prohibited by SB 17. And, unlike in *Wang* (as it related to purchases made by F-1 visaholders with a desire to stay in the country), the Attorney General has not disavowed enforcement of the new law for such purchases. This is enough.

To the extent that this is constitutes an impermissible presumption of enforcement under *Wang*, or that the Attorney General can avoid Article III standing by merely disclaiming an intent to enforce SB 17 against these Appellants, *Wang* conflicts with *La Union del Pueblo Entero*. Under the Rule of Orderliness, this Court should follow *La Union*, not *Wang*. *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016).

Finally, even if it were true at the time that the Texas Attorney General had not enforced SB 17, that is no longer true. *Texas v. Colony*

*Ridge Development,* No. 4:24-cv-00941, Dkt. 97-1 at ¶¶ 9-11 (S.D. Tex. Feb. 10, 2026) (requiring Colony Ridge to "take reasonable steps" to require compliance with SB 17). This is sufficient to show the requisite "scintilla of enforcement by the relevant state official with respect to the challenged law." *City of Austin v. Paxton,* 943 F.3d 993, 1002 (5th Cir. 2019) (cleaned up) (describing test under *Ex Parte Young* and then applying it to standing as well, as "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap'"); *see also Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (cleaned up) (quoting *City of Austin* and finding scintilla of enforcement enough). So Appellants meet the credible threat of enforcement test here even under a broad interpretation of *Wang* that is somehow controlling over *La Union*.

### B. Appellants reserve the right to challenge the correctness of *Wang*.

Even if *Wang* applies here to deny standing to Appellants, *Wang* is wrongly decided. Respectfully, for instance, there is no proper grounds to differentiate the credible threat of enforcement test under Article III in cases brought under the First Amendment, which was enacted after Article III, versus other cases. Appellants reserve the right to challenge the correctness of *Wang* in front of this Court en banc or the Supreme Court

to the extent the Court applies it here to affirm the denial of the preliminary injunction by the District Court.

## CONCLUSION

This Court should vacate the District Court's denial of a preliminary injunction and remand the case for the District Court to decide Appellants' motion for a preliminary injunction in the first instance. *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) (appropriate course for when district court does not reach an issue is "to remand for the district court to do so").[3]

If this Court reaches the merits of the preliminary injunction, it should find a preliminary injunction appropriate as to Appellants and the provisional class for the reasons explained in the briefing below.

---

[3] Huang and Dai have been dismissed from the litigation. Appellants have not appealed that dismissal because there has not been a final judgment under Federal Rule of Civil Procedure 54(b). Still, since the reasons for the dismissal and the reasons for the denial of the preliminary injunction remain the same, any decision vacating the denial of the preliminary injunction will necessarily require the District Court to also reconsider the (interlocutory) dismissal of Appellants' claims.

March 6, 2026

Respectfully submitted,

/s/ Justin Sadowsky

Justin Sadowsky
CHINESE AMERICAN
LEGAL DEFENSE
ALLIANCE
4250 N. Fairfax Drive #600
Arlington, VA 22203
646-785-9154
justins@caldausa.org

Keliang (Clay) Zhu
CHINESE AMERICAN
LEGAL DEFENSE
ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588
925-399-6702
czhu@dehengsv.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 5,078 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

/s/ Justin Sadowsky